UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JET EXPERTS, LLC,<br><br>      Plaintiff,<br><br> v.<br><br>ASIAN PACIFIC AVIATION<br>LIMITED and TVPX AIRCRAFT<br>SOLUTIONS, INC., IN ITS CAPACITY AS<br>OWNER TRUSTEE,<br><br>      Defendants. | Case No. |

## VERIFIED COMPLAINT

Plaintiff Jet Experts, LLC ("Jet Experts" or "Plaintiff"), for its Verified Complaint against Defendant Asian Pacific Aviation Limited ("Asian Pacific") and Defendant TVPX Aircraft Solutions, Inc., in its capacity as owner trustee, ("TVPX") (collectively "Defendants"), alleges and states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff is a company affiliated with Dr. Bruce Gillis, who has been searching for a private jet to use as, among other things, an organ transplant transportation jet and air ambulance for his critical need patients. Eleven months ago, Plaintiff entered into a contract (the "Purchase Agreement") with Defendants to purchase the highly unique aircraft at issue in this case, which not only has a divan for transporting prone patients, but also has been overhauled (at Plaintiff's considerable expense) so that it can be operated continually without a major inspection for eight years. Indeed, in reliance on the Purchase Agreement and Defendants' repeated oral assurances,

Plaintiff's pilots recently completed training and certification to fly this particular plane.  There literally is not another one like it for sale anywhere in the world.

2.    Nonetheless, on the eve of closing, and in clear violation of the Purchase Agreement and numerous laws, in recent days Defendants repudiated the Purchase Agreement, left the Aircraft located in China (where Asian Pacific's owners reside), arranged for the Aircraft not to be tracked on FlightAware and, reportedly, upon information and belief is attempting to sell the Aircraft to another party in China as soon as ***March 25, 2022***.

3.    Plaintiff seeks a temporary restraining order preventing Defendants' reported sale, and further injunctive relief to protect Jet Expert's rights to specific performance of the Purchase Agreement.  The terms of the Purchase Agreement are clear, and Plaintiff has every likelihood of success on the merits, but without the emergency relief requested here, Plaintiff will likely be left without any effective remedy at all, since Asian Pacific is a foreign, single-asset special purpose entity that will soon lack even that one asset, and TVPX, the legal title holder as trustee owner, cannot be sued in its plenary capacity.

## JURISDICTION AND VENUE

4.    This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(3) because the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and is between citizens of different states in which a citizen of a foreign state is an additional party.

5.    Defendants are subject to personal jurisdiction in the Southern District of New York (the "SDNY") because they entered into a contract with Plaintiff whereby they irrevocably and unconditionally consent to the exercise of personal jurisdiction over them by the SDNY, waive any objection they may have to such jurisdiction, and agree that service of any court paper in any

such action can be effected on them by mail, or in such other manner as may be provided under applicable laws or court rules in the SDNY; and jurisdiction over Defendants is otherwise proper before this Court.

6.     Venue is proper in this Court because Plaintiff and Defendants entered into a contract whereby they irrevocably and unconditionally consent and waive any objection to the laying of venue in the SDNY, and venue is otherwise proper under 28 U.S.C. § 1391.

## THE PARTIES

7.     Plaintiff Jet Experts is a foreign limited liability company existing and organized under the laws of, and with its principal place of business in, the State of California.

8.     Jet Experts' members are California residents.

9.     Jet Experts' principal is Dr. Bruce Gillis, a world-renowned doctor performing research and medical services for university medical centers and biotech companies across the United States.

10.     Defendant Asian Pacific is a foreign company existing and organized under the laws of the British Virgin Islands.

11.     Upon information and belief, Defendant Asian Pacific's principal place of business is in the People's Republic of China ("China").

12.     Defendant TVPX is a foreign corporation existing and organized under the laws of the State of Utah.

13.     Upon information and belief, Defendant TVPX's principal place of business is in Utah.

3

## STATEMENT OF FACTS

14.     TVPX is the successor owner trustee of the Aircraft (as defined below) under the Trust Agreement dated January 22, 2013, and as amended and restated by the Amended and Restated Trust Agreement dated September 25, 2018 (the "Trust Agreement").

15.     TVPX owns legal title to the Aircraft.

16.     TVPX is being sued solely in its capacity as owner trustee of the Aircraft and, on information and belief, in its capacity as owner trustee has no assets other than legal title to the Aircraft.

17.     Asian Pacific is the trustor under the Trust Agreement.

18.     Asian Pacific holds beneficial title to the Aircraft (as defined below).

19.     On information and belief, Asian Pacific is a special purpose vehicle (also known as a shell company), formed in the British Virgin Islands, for the sole purpose of holding beneficial title to the Aircraft, and has no other assets.

20.     On April 30, 2021, Asian Pacific and TVPX, as owner trustee, entered into an Aircraft Purchase Agreement (the "Purchase Agreement") with Cloud Nine Aviation, LLC ("Cloud Nine"), attached hereto as Exhibit 1.[1]

21.     Under the Purchase Agreement, Cloud Nine agreed to purchase from Asian Pacific and TVPX, and Asian Pacific and TVPX agreed to sell to Cloud Nine, a 2012 Bombardier Challenger 300 bearing manufacturer's serial number 20382 and U.S. Registration Number N528YT and two (2) Honeywell model AS907-1-1A aircraft engines bearing manufacturer's serial numbers P-118908 and P-118909, each as more fully described in the Purchase Agreement and

---

[1]     Cloud Nine is a California limited liability company organized and existing under the laws of the State of California. Cloud Nine's sole members are California residents.

associated exhibits to the Purchase Agreement (collectively, the "Aircraft"), for the total purchase price of eight million United States dollars ($8,000,000.00) (the "Purchase Price").

22.    On January 13, 2022, Cloud Nine assigned all right, title, and interest in and to the Purchase Agreement to Jet Experts (which shares similar ownership), with the knowledge and acceptance of Asian Pacific.

23.    Under the assignment, Jet Experts agreed to be bound by all the terms, covenants and conditions of the Purchase Agreement and assumed all of Cloud Nine's right, title, and interest in and to the Purchase Agreement.

24.    Jet Experts accepted and assumed the Purchase Agreement because the Aircraft is a unique Aircraft and is uniquely suitable to Jet Experts' needs.

25.    The Aircraft is unique both in the market and with respect to Jet Experts' requirements, for the following reasons by way of example:

   a) This Aircraft has been out of service for more than a year being inspected, serviced, and having its systems overhauled resulting in substantially less wear and tear than on any similar aircraft.

   b) This Aircraft has uniquely low flight time for a 2012 Challenger 300, namely only 1,300 total flight hours instead of an average flight time of 3,500 flight hours. On information and belief, this is the newest, lowest flight time Challenger 300 in the world.

   c) No other Challenger 300 aircraft anywhere in the world has fresh 6, 12, 24, 36, 48 and 96 month inspections.

   d) The engines in this Aircraft have been overhauled through Jet Experts' intervention, so they are now at "zero time" versus the overall time on the aircraft

of 1300 hours. There are thus no similar aircraft on the market.  And there are likely no other Challenger 300 aircraft anywhere in the world with zero time engines.

e)  The aircraft has a unique interior configuration, which includes a three-place divan.  Jet Experts' principal, Dr. Bruce Gillis, is a physician and this particular divan allows him to use the aircraft for air ambulance purposes.  In the past, Dr. Gillis has needed aircraft to move fresh human livers for liver transplant teams and transport injured parties with life-threatening medical injuries. The specifications of this Aircraft will permit him to perform similar medical interventions.

f)  Jet Experts' pilots have been specifically trained and certified for this Aircraft.

g)  Jet Experts has existing executed contracts with the Aircraft manufacturer to install updated aircraft avionics specific to this Aircraft and, if the sale is not completed, would lose not just the value of the contract but its scheduled place in line, the loss of which is impossible to calculate.

h)  The APU (auxiliary power unit) has already been inspected and scheduled for a paid-in-full overhaul here in the United States due to a detected cracked combustion chamber which was found via a borescope analysis accomplished by Jet Experts.  If the sale is not completed, Jet Experts would lose not just the value of the contract but its scheduled place in line, the loss of which is impossible to calculate.  To Jet Experts' knowledge, there are no other Challenger 300 aircraft anywhere in the world with a zero time APU.

      i)   Jet Experts has an existing executed, pre-paid contract for a factory/manufacturer aircraft parts program specific to this Aircraft.

26.     In addition to the above factors making the Aircraft a unique chattel, any alleged monetary remedies proposed by Defendants related to the expenditure of Jet Experts' personnel time and resources in connection with this Aircraft, lost opportunity costs over the last eleven months, harm to business reputation based on the inevitable forced breaches of multiple contracts in the industry and with regard to its own personnel, and vast difference in Jet Experts' position within the aircraft market if it is required to start the acquisition process from scratch today, would be wholly inadequate because they are hypothetical, speculative and/or impossible to calculate.

27.     On January 13, 2022, Cloud Nine, in accordance with Section 7.9 of the Purchase Agreement, assigned all of its right, title, and interest in and to the Purchase Agreement to Jet Experts (the "Assignment"), attached hereto as Exhibit 2.

28.     Defendants accepted the assignment from Cloud Nine to Jet Experts on January 17, 2022. *See* Exhibit 3.

29.     Under the Assignment, Jet Experts agreed to be bound by all the terms, covenants and conditions of the Purchase Agreement and assumed all of Cloud Nine's right, title, and interest in and to the Purchase Agreement.

30.     Per the Purchase Agreement, Jet Experts was given the sole and exclusive right to purchase the Aircraft.  The Purchase Agreement expressly states:

> Effective upon execution and delivery of this Agreement by each party, and unless and until this Agreement is terminated in accordance with its terms, ***the Aircraft shall be subject to [Jet Expert's] exclusive right to purchase, and Seller shall not list the Aircraft for sale in the marketplace or offer to sell or enter into negotiations to sell the Aircraft to any person other than [Jet Experts].***

> *See* Ex. 1, § 2.4 (emphasis added).

7

31.     Closing on the sale of the Aircraft was to occur "within three (3) Business Days after [the] later of (i) the arrival of the Aircraft at Delivery Location; or (ii) the Aircraft is returned to service following the repair and/or correction of all Additional Discrepancies [which occurred as of March 10, 2022], if applicable." *See* Amendment to Aircraft Purchase Agreement at § 1.10, attached hereto as <u>Exhibit 4</u> (the "First Amendment").

32.     Asian Pacific and TVPX have executed the FAA Bill of Sale for the Aircraft in favor of Jet Experts as Purchaser, and deposited it into escrow with Insured Aircraft Title Services, LLC in Oklahoma City, Oklahoma ("IATS" or the "Escrow Agent").

33.     Jet Experts has fully satisfied its obligations to date under the Purchase Agreement, including, but not limited to, depositing $300,000.00 in escrow funds towards the Aircraft Purchase Price, which are being held by IATS.

34.     In fact, Jet Experts has gone above and beyond what was required to effectuate this transaction by simultaneously completing required inspections under the Purchase Agreement so that closing on the Aircraft would occur on time.

35.     Although it is typically the obligation of a seller, Jet Experts coordinated with the original equipment manufacturer for the overhaul of the Aircraft's engines so that closing on the Aircraft would occur on time.

36.     Contrary to standard market practice, Jet Experts agreed to accept the auxiliary power unit in "as is" condition so that closing on the Aircraft would occur on time. *See* Amendment to Aircraft Purchase Agreement, attached hereto as <u>Exhibit 5</u> (the "Second Amendment").

37.     Although it is typically the obligation of a seller, Jet Experts arranged for a flight crew to ferry the Aircraft to the Delivery Location, at Jet Experts' expense, so that closing on the Aircraft would occur on time.

38.     And while Seller was obligated pursuant to the Purchase Agreement to fly the Aircraft to Singapore from the Bombardier repair facility in China, they have refused to do so and have refused the right of Jet Experts' pilots to do so.

39.     Because Jet Experts entered into the Purchase Agreement with Asian Pacific and TVPX, Jet Experts forewent the purchase of other alternative aircraft during the eleven (11) months after the Purchase Agreement was executed.

40.     Jet Experts relied on the continued assurances and promises of Asian Pacific and TVPX that they intended to close on the Aircraft's sale when Jet Experts conducted simultaneous inspections, coordinated with the original equipment manufacturer for the overhaul of the Aircraft's engines, accepted the auxiliary power unit in "as is" condition, arranged for the Aircraft to be ferried to the Delivery Location at its cost, and forewent the opportunity to purchase other aircraft.

41.     Jet Experts has fully satisfied all of Purchaser's obligations to date under the Purchase Agreement.

42.     On March 15, 2022, Asian Pacific and TVPX informed Jet Experts via email that it decided to "terminate the sale of the Aircraft," providing no basis or reason for doing so. *See* Termination Letter dated March 14, 2022, attached hereto as Exhibit 6.

43.     Jet Experts immediately responded to the Seller's Termination Letter on March 15, 2022 and stated that it objected to the purported unilateral termination of the Purchase Agreement. *See* March 15, 2022 Rejection of Termination Letter, attached hereto as Exhibit 7.

44.     In accordance with the notice provisions in the Purchase Agreement, on March 17, 2022, Jet Experts provided written notice to Asian Pacific and TVPX that the attempted unilateral termination was unlawful and not provided for under the Purchase Agreement.  Jet Experts further

demanded that Asian Pacific and TVPX comply with the Purchase Agreement and effectuate the sale of the Aircraft.  *See* March 17, 2022 Demand For Performance Letter, attached hereto as Exhibit 8.

45.     Jet Experts has received no substantive response to its March 17, 2022 letter.

46.     On information and belief, on or around March 22, 2022, Asian Pacific and TVPX disabled the Aircraft's Flight Aware software in an apparent attempt to prevent Jet Experts from knowing the exact location of the Aircraft.

47.     On the evening of March 23, 2022, after the close of business in California, Jet Experts received information that Asian Pacific and TVPX are planning to sell the Aircraft to a third party on or before March 25, 2022.

48.     In accordance with the notice provisions in the Purchase Agreement, on March 24, 2022, Jet Experts again provided written notice to Asian Pacific and TVPX that the attempted unilateral termination was unlawful and not provided for under the Purchase Agreement.  Jet Experts again demanded that Asian Pacific and TVPX comply with the Purchase Agreement and effectuate the sale of the Aircraft.  And Jet Experts advised Asian Pacific and TVPX that it was promptly filing this action, and seeking a temporary restraining order and preliminary injunction directing them, among other things, to refrain from, directly or indirectly, selling, transferring, pledging, assigning, liquidating, setting off, hypothecating, or otherwise encumbering or disposing of the Aircraft to anyone other than Jet Experts, or taking any steps to in any way impair, abridge, modify, relinquish, waive or amend TVPX's rights, interests, ownership, and possession of, in and to the Aircraft pending resolution of this dispute. *See* March 24, 2022 Notice of Action, TRO and PI, attached hereto as Exhibit 9.

49.     As of the time of this filing, Defendants have failed to cure their deficiencies under the Purchase Agreement, rescind their purported Termination Letter, or deny their intention to sell the Aircraft to a third party on or before March 25, 2022.

50.     Defendants' unilateral attempt to terminate the Purchase Agreement is unlawful and the purported Termination Letter has no binding or legal effect.

51.     The Purchase Agreement gives Jet Experts, as Purchaser, the exclusive right to purchase the Aircraft.  *See* Ex. 1, § 2.4.

52.     The Seller only has the right to terminate the Purchase Agreement if the Aircraft is destroyed or damaged, or "in the event of a breach by Purchaser of any material obligation under th[e Purchase Agreement] which breach is not cured within ten (10) Business Days of the delivery to Purchaser of written notice thereof from Seller or which breach by its nature cannot be cured prior to Closing." *See* Ex. 1, §§ 7.4.2 and 7.5.2.

53.     On information and belief, the Aircraft has not been destroyed or damaged.  To the contrary, the Aircraft has been substantially improved by Plaintiff and Defendants intend to sell it to a third party for a higher sales price.

54.     Defendants have never served Plaintiff with a notice of material breach or demand to cure.  And Defendants have not alleged, and cannot allege, any breach of the Purchase Agreement by Jet Experts, much less the breach of a material obligation.

55.     Defendants have thus breached the following express provisions of the Purchase Agreement, among others: Section 2.1 "Agreement", Section 4.1 "Pre-Closing Obligations, Section 2.4 "Exclusive Right to Purchase", Section 7.4.2 "Destruction or Damage," and Section 7.5.2 "Purchaser's Default", and have anticipatorily breached by repudiation of their obligations

under the Purchase Agreement to provide lien releases, reposition the Aircraft for final delivery, and meet the other obligations and conditions for closing. *See* <u>Ex. 1</u>, Article IV..

56.     Defendants have also breached their duties of good faith and fair dealing by providing false assurances and promises that they intended to close on the sale of the Aircraft and then unilaterally attempting to terminate the Purchase Agreement and sell the Aircraft to a third party.

## **<u>FIRST CAUSE OF ACTION</u>**

### **(Specific Performance)**

57.     Plaintiff hereby realleges each allegation of the foregoing paragraphs as if fully set forth herein.

58.     The Purchase Agreement, as amended, is a valid, enforceable, and legally binding contract between and among Jet Experts, Asian Pacific, and TVPX.

59.     The Purchase Agreement includes an accurate description of the subject matter of the contract, the Aircraft.

60.     Jet Experts has fulfilled all of the Purchaser's duties and obligations under the Purchase Agreement to date, and is ready, willing, and able to perform under the Purchase Agreement including closing on the Aircraft.

61.     TVPX holds legal title to the Aircraft.

62.     Asian Pacific has exclusive physical control of the Aircraft.

63.     It is within Defendants' power to perform under the Purchase Agreement.

64.     On or about March 14, 2022, Defendants improperly purported to terminate the Purchase Agreement providing no justifiable or legal basis for doing so.

65.     On information and belief, Defendants intend to sell the Aircraft to a third party other than Plaintiff on or before March 25, 2022.

66.     Defendants have actually breached §§ Section 2.1 "Agreement", Section 4.1 "Pre-Closing Obligations, Section 2.4 "Exclusive Right to Purchase", Section 7.4.2 "Destruction or Damage" and Section 7.5.2 "Purchaser's Default," and have anticipatorily breached by repudiation of their obligations under the Purchase Agreement to provide lien releases, reposition the Aircraft for final delivery, and meet the other obligations and conditions for closing. *See* <u>Ex. 1</u>, Article IV.

67.     For the reasons stated herein, the Aircraft is unique in kind, configuration, and quality and suitable substitutes are not only unreasonably difficult or inconvenient to procure, they are unobtainable and/or do not exist.

68.     As described herein, Plaintiff has no reasonable prospect of covering if specific performance is denied.

69.     In addition to the above factors making the Aircraft a unique chattel, any alleged monetary remedies that may be proposed by Defendants related to the expenditure of Jet Experts' personnel time and resources in connection with this Aircraft and the transaction, lost opportunity costs incurred over the last eleven months and going forward, harm to business reputation based on the inevitable forced breaches of multiple contracts in the industry and with regard to its own personnel, and vast difference in Jet Experts' position within the aircraft market if it is required to start the acquisition process from scratch today, would be wholly inadequate because they are hypothetical, speculative and/or impossible to calculate.

70.     Plaintiff respectfully requests that this Court enter judgment granting Plaintiff specific performance of the Purchase Agreement.

## SECOND CAUSE OF ACTION

### (Constructive Trust)

71.     Plaintiff realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

72.     As set forth herein, Defendants falsely claimed to lack sufficient knowledge and capability to perform many of their own contractual obligations and other acts expected of a seller in the industry, and repeatedly promised to sell the Aircraft to Plaintiff.

73.     In reliance on Defendants' representations, Plaintiff has expended an enormous amount of personnel time, expertise, money, and industry-related resources to perform acts that were Defendants' obligations under the Purchase Agreement or otherwise expected of a seller in the industry, has made for extraordinary improvements to the Aircraft, and has outstanding pre-paid contracts for additional services to be performed on the Aircraft.

74.     On information and belief, Defendants made each of these misrepresentations with the intention of causing Plaintiff to transfer all of these benefits to Defendants and the Aircraft, and with the intention to keep the Aircraft in China to sell it to a third party for an amount far in excess of the purchase amount set forth in the Purchase Agreement at issue.

75.     This unusual conduct created a relationship between the parties more akin to a confidential or special relationship whereby Defendants owed duties to Plaintiff greater than those in a traditional arms'-length relationship.

76.     Defendants have refused to sell the Aircraft to Jet Experts despite their express promise to do so.

77.     Under the circumstances, Defendants would be unjustly enriched if they were permitted to retain these benefits as well as the Aircraft without transferring ownership of the Aircraft to Plaintiff.

78.     The imposition of a constructive trust is necessary to satisfy the demands of justice.

79.     Accordingly, Plaintiff respectfully requests that the Court impose a constructive trust on the Aircraft, its flight logs and avionics, the FAA Bill of Sale executed by Asian Pacific and TVPX, and any other documentation evidencing or concerning legal and equitable title to the Aircraft rendering Asian Pacific and TVPX constructive trustees for the benefit of Jet Experts.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment)

80.     Plaintiff realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

81.     An actual case or controversy exists with regard to the parties disputed rights and obligations under the Purchase Agreement.

82.     Plaintiff respectfully requests that the Court enter a judgment declaring that the Purchase Agreement was not terminated by Defendants' purported Termination Letter and declaring that Defendants are obligated to sell the Aircraft to Plaintiff and must promptly move forward with the closing.

## FOURTH CAUSE OF ACTION

### (Permanent Injunction)

83.     Plaintiff realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

84.     Jet Experts seeks a permanent injunction preventing Defendants from selling the Aircraft to any third party other than Plaintiff, directing Defendants to sell the Aircraft to Plaintiff and to immediately schedule and comply with their obligations to close the transaction in accordance with the Purchase Agreement.

85.     On information and belief, Asian Pacific has been in discussions with third parties regarding the sale of the Aircraft to them.

86.     Jet Experts is likely to prevail on the merits because it has satisfied all of its obligations under the Purchase Agreement and Jet Experts has an exclusive contractual right to purchase the Aircraft.  For the reasons stated in Plaintiff's Memorandum of Law in Support of its contemporaneously filed Motion for a Temporary Restraining Order and Preliminary Injunction, Plaintiff is likely to succeed on the merits of its claims for specific performance, the imposition of a constructive trust, and declaratory judgment or, in the alternative for unjust enrichment.

87.     Jet Experts is likely to suffer irreparable harm if the injunction is not granted because, as set forth in detail herein, the Aircraft is unique chattel and any alleged monetary remedies proposed by Defendants related to the expenditure of Jet Experts' personnel time and resources in connection with this Aircraft, lost opportunity costs over the last eleven months, harm to business reputation based on the inevitable forced breaches of multiple contracts in the industry and with regard to its own personnel, and vast difference in Jet Experts' position within the aircraft market if it is required to start the acquisition process from scratch today, would be wholly inadequate because they are hypothetical, speculative, and/or impossible to calculate.

88.     The balance of the equities weighs in heavily favor of Jet Experts because it has acted in good faith during this transaction, satisfied all of its obligations to date under the Purchase Agreement, and provided benefits to Defendants far in excess of anything that Jet Experts was

contractually obligated to do under the Purchase Agreement as set forth in detail herein.  The only conceivable harm to Defendants is the risk that they knowingly and willingly assumed when they executed a binding agreement to sell the Aircraft to Plaintiff, namely, that the market price for the Aircraft would increase during the contract term.  Even in this regard, Defendants would never have had a more valuable aircraft from which to seek a higher sales price if it were not for all of the expertise, effort, and expense that Plaintiff has incurred to increase the value of the Aircraft.

89.     The public interest would not be disserved by the issuance of an injunction because, among other things, the public has a clear interest in ensuring contracting parties satisfy their agreed-to obligations, especially where, as here, the sale of the Aircraft of Jet Experts provides the additional benefit to the public of providing Dr. Gillis with the opportunity to use the Aircraft in service of patients' needs.  There is no public benefit to be gained by permitting Defendants to retain or sell the Aircraft to a third party in violation of the Purchase Agreement.

90.     Accordingly, Plaintiff requests that the Court enter a permanent injunction restraining and enjoining Defendants, and each of their respective owners, principals, officers, directors, managers, employees, affiliates, subsidiaries, representatives, agents (including without limitation escrow agents), servants, attorneys, pilots, flight crew members, aircraft managers, aviation vendors, and service providers; and all those acting in concert or participation with any of the foregoing who receive notice of this Order (collectively with Defendants, the "Restrained Parties"), from directly or indirectly selling the Aircraft to anyone other than Plaintiff; directing Defendants to sell the Aircraft to Plaintiff and to promptly proceed with the performance of Defendants' closing obligations under the terms of the Purchase Agreement.

## FIFTH CAUSE OF ACTION

### (Alternative to First through Fourth Causes of Action - Unjust Enrichment)

91.     Jet Experts realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 56 above as if fully set forth herein.

92.     As an alternative to the First, Second, Third, and Fourth Causes of Action, in the event the Court were to find that the Purchase Agreement was legally terminated by Defendants, Plaintiff alleges this claim for unjust enrichment.

93.     As set for herein, Defendants falsely claimed to lack sufficient knowledge and capability to perform many of their own contractual obligations and other acts expected of a seller in the industry, and repeatedly promised to sell the Aircraft to Plaintiff.

94.     In reliance on Defendants' representations, Plaintiff has expended an enormous amount of personnel time, expertise, money, and industry-related resources to perform acts that were Defendants' obligations under the Purchase Agreement or otherwise expected of a seller in the industry, has made for extraordinary improvements to the Aircraft, and has outstanding pre-paid contracts for additional services to be performed on the Aircraft.

95.     On information and belief, Defendants made each of these misrepresentations with the intention of causing Plaintiff to transfer all of these benefits to Defendants and the Aircraft, and with the intention to fly the Aircraft back to China to sell it to a third party for an amount in excess of the purchase amount set forth in the Purchase Agreement at issue.

96.     Defendants have refused to sell the Aircraft to Jet Experts despite their express promise to do so.

97.     Under the circumstances, Defendants would be unjustly enriched if they were permitted to retain these benefits as well as the Aircraft or the proceeds of any sale of the Aircraft to a third party other than Plaintiff.

98.     Plaintiff therefore seeks damages in amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.      Grant a judgment in favor of Plaintiff against Defendants on the First, Second, Third, and Fourth Causes of Action or, in the alternative, on the Fifth Cause of Action in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

B.      Impose a constructive trust on the Aircraft, its flight logs and avionics, the FAA Bill of Sale executed by Asian Pacific and TVPX, and any other documentation evidencing or concerning legal and equitable title to the Aircraft rendering Asian Pacific and TVPX constructive trustees for the benefit of Jet Experts;

C.      Declare that the Purchase Agreement was not terminated by Defendants' purported Termination Letter and declaring that Defendants are obligated to sell the Aircraft to Plaintiff and must promptly move forward with the closing;

D.      Issue a temporary restraining order and preliminary injunction pending resolution of Plaintiff's claims in this action as requested in Plaintiff's contemporaneously filed Motion For a Temporary Restraining Order and Preliminary Injunction;

E.      Issue a permanent injunction prohibiting the sale of the Aircraft to any third party other than Plaintiff, and directing Defendants to sell the Aircraft to Plaintiff and

promptly comply with all of Seller's closing obligations under the Purchase Agreement;

F.     Award Plaintiff its attorneys' fees and costs; and

F.     Grant Plaintiff such other and further relief as the Court deems just.

Dated: New York, New York
      March 24, 2022

            Respectfully submitted,

            **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.**

            By: /s/ Courtney R. Rockett
                Courtney R. Rockett
                Kevin N. Ainsworth
                Jason Vigna
                Whitney M. Costin
                Chrysler Center
                666 Third Avenue
                New York, New York 10017
                (212) 935-3000
                kainsworth@mintz.com
                crockett@mintz.com
                wmcostin@mintz.com

            Joel Harmon (*pro hac vice pending*)
            Evan Way (*pro hac vice pending*)
            **CROWE & DUNLEVY**
            Braniff Building
            324 N. Robinson Ave.
            Suite 100
            Oklahoma City, OK 73102-8273
            (405) 235-7700 (Telephone)
            (405) 239-6651 (Facsimile)
            joel.harmon@crowedunlevy.com
            evan.way@crowedunlevy.com

            *ATTORNEYS FOR PLAINTIFF*
            *JET EXPERTS, LLC*

## **VERIFICATION**

I, Bruce Gillis, M.D., as authorized signatory on behalf of Jet Experts, LLC, declare under penalty of perjury that I have read the foregoing Verified Complaint, and that the facts alleged therein are true and correct to the best of my personal knowledge.

Dated:  March 24, 2022

JET EXPERTS, LLC

BY: _____

Bruce Gillis, M.D., Managing Member